El Pueblo de Puerto Rico, demandante y apelado, *v.* Ramón Ramírez, acusado y apelante.

Núm. 6823.—*Sometido:* Diciembre 17, 1937. *Resuelto:* Enero 13, 1938.

*Burset & Pérez Pimentel* y *Manuel A. Bustelo,* abogados del apelante; *R. A. Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

El Juez Asociado Señor Travieso emitió la opinión del tribunal.

La acusación en el presente caso lee así:

"El referido Ramón Ramírez en uno de los días del mes de octubre de 1936, en la municipalidad de Vieques, dentro del Distrito Judicial de Humacao, P. R., ilegal y voluntariamente portaba sobre su persona un revólver, arma con la cual puede causarse daño corporal y con disparos del cual dió muerte a Felipe Bermúdez (*a*) 'Toto.'"

El acusado ha apelado de la sentencia de tres meses de prisión que le fué impuesta, alegando como único error que dicha sentencia no está sostenida por la prueba y es contraria a la prueba y a derecho.

■ Hemos examinado la prueba. Ella establece los hechos siguientes:

El policía insular Hermenegildo Maldonado declaró que como dos o tres días después del encuentro entre el acusado y Felipe Bermúdez (a) Toto, en el que este último perdió la vida, el acusado le entregó un revólver y le manifestó que él le había quitado el revólver a Bermúdez en el momento de la lucha; que el acusado tenía una herida en el hombro, que parecía como de navaja o algo así.

Agustín R. Quiñones, declaró: que en la madrugada del suceso él estaba como a 75 u 80 metros de donde oyó unas detonaciones; que corrió hacia el sitio, quedándose como a 20 ó 25 metros de distancia y que desde allí oyó al acusado que decía que con el mismo revólver de Toto éste se había pegado un tiro mientras luchaba con el acusado; que cree que cuando el acusado decía eso el tendría el revólver en la mano, pero que no vió el revólver porque estaba a distancia.

Eladio Pérez Rodríguez, declaró: que el día de autos el interfecto, conocido por Toto, llegó al establecimiento del testigo y pidió le sirvieran una botella de ron; que se le dió el ron y se lo tomó allí con otras personas; que después pidió otra botella y él se la dió; que continuaron en la tienda, hablando de política, el testigo y Maximino Ramírez y Ramón Ramírez, el acusado; que poco después de haberse marchado el acusado oyó un disparo y él abrió la puerta y vió un caballo en la carretera en el que andaba Toto Bermúdez y dos que luchaban en el suelo; que él corrió hacia allá y cuando llegó al sitio donde ellos estaban en la cuneta, entonces se levantaba el acusado del suelo, portando un revólver en la mano, y al preguntarle "qué pasa" el acusado le dijo: "Este hombre ha querido arrebatarme la vida con este revólver y luchando con él por no dejarme matar salió un tiro y está herido, yo también estoy herido"; que el herido le dijo que había sido herido con su mismo revólver y que el revólver que portada el acusado era el suyo; que el herido al llegar al hospital le declaró a dos policías que él había sido herido con su mismo

revólver; que al otro día la policía vino a casa del acusado y éste les entregó el arma; que cuando el interfecto estuvo en su establecimiento él le vió el revólver que tenía dentro del seno y que se le veía porque estaba en cuerpo de camisa.

El acusado Ramón Ramírez declaró que al salir de casa de Eladio Pérez para la suya el interfecto se le fué detrás, montado en un caballo, le atajó en el camino y le preguntó que para dónde iba y él le respondió que se iba a dormir; que el interfecto le dijo "tú no eres guardia de aquí" y le tiró una patada desde arriba del caballo; que él le dijo al interfecto "mire, tenga calma, no me tire a atropellarme" y entonces él le dijo: "Lárguese de todo esto, mire que yo tengo mi revólver aquí y se lo esgrano en los sesos a cualquiera"; que él siguió andando y el interfecto se le fué detrás, se tiró del caballo y le dijo: "Entonces tú dices que vas a dormir"; que al decirle que sí, el interfecto replicó: "Pues no, a dormir tú no vas ahora"; que cuando el interfecto fué a hacer uso del revólver para pegarle un tiro él avanzó, lo empuñó por la correa con todo y revólver y cuando uno y otro forcejearon salió un tiro; que el revólver con que aconteció el suceso era el del interfecto y que él no portaba ninguna arma.

Convenimos con el apelante en que la prueba de cargo no es suficiente para sostener la acusación. La evidencia ofrecida por El Pueblo demuestra que el revólver visto en manos del acusado en el momento en que luchaba con su adversario era propiedad de este último, y que fué éste el que portó el arma hasta el sitio en que ocurrió la lucha.

Argumenta el Fiscal en el sentido de que aun admitiendo que el revólver fuese propiedad del interfecto, el acusado lo portó ilegalmente desde el sitio en que ocurrió la lucha hasta su casa, donde fué entregado por él algún tiempo después a la Policía. Aun cuando aceptáramos que después de desarmar y herir a su adversario el acusado se llevó el arma a su casa, con el propósito de entregarla a la policía y de probar que el arma no era de él sino de su adversario,

ésa no sería la portación ilegal y voluntaria a que se refiere el estatuto. Si los hechos ocurrieron tales y como aparecen de la prueba de cargo, el acusado no violó el estatuto al llevarse y conservar, como evidencia de su alegada legítima defensa, el arma con que su adversario trató de agredirle o de privarle de su vida.

*Debe revocarse la sentencia y absolverse libremente al acusado apelante.*

Los Jueces Asociados Señores Hutchison y Córdova Dávila no intervinieron.